IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**NAVIGATORS INSURANCE COMPANY**                                **PLAINTIFF**

**V.**                                                                                                   **NO. 3:19-CV-156-DMB-JMV**

**THUNDER CONSTRUCTION**
**CORPORATION and**
**MICHAEL SKINNER, individually**                                   **DEFENDANTS**

## ORDER

Following an entry of default against Thunder Construction Corporation and Michael Skinner, Navigators Insurance Company seeks a default judgment against them based on their failure to indemnify it for sums paid under a construction performance bond. Because the Court finds a default judgment is warranted on Navigators' claim for breach of the indemnity agreement but that Navigators has failed to establish its damages in accordance with the indemnity agreement, Navigators' motion for default judgment will be granted in part and denied in part.

## I
## Procedural History

On July 23, 2019, Navigators Insurance Company filed a complaint in the United States District Court for the Northern District of Mississippi against Thunder Construction Corporation and Michael Skinner, individually, alleging various claims related to a general indemnity agreement executed by Thunder and Skinner in return for Navigators' issuance of payment and performance bonds. Doc. #1. The complaint contains six counts: (1) "Specific Performance of the [General Indemnity Agreement];" (2) "Breach of General Indemnity Agreement;" (3) "Common Law Indemnity;" (4) "Collateral Security;" (5) "Exoneration and Quia Timet;" and (6) "Fraud." *Id.* at 7–12. As relief, Navigators seeks (1) specific performance of the indemnity

agreement; (2) an award of "$228,061.53 plus pre-judgment and post-judgment interest, attorneys' fees, and costs and expenses additionally incurred and/or subsequently incurred by Navigators;" (3) a "permanent mandatory injunction requiring the defendants to deposit collateral security with Navigators in an amount no less than $228,061.53;" (4) an injunction requiring the defendants to "pay any forthcoming claims made against the Performance Bond" issued by Navigators; and (5) punitive damages. *Id.* at 13.

On October 29, 2019, after Navigators was notified twice that the docket failed to show proof of service of process on the defendants,[1] United States Magistrate Judge Jane M. Virden ordered that Navigators had thirty days to "either complete service of process upon the defendants or show cause in writing why this action should not be dismissed pursuant to Rule 4(m)." Doc. #8. Approximately one month later, Navigators filed a motion for service by publication, Doc. #14, which Judge Virden granted, Doc. #17.

Following service by publication, Navigators moved for an entry of default against Thunder and Skinner on March 16, 2020. Doc. #21. Default was entered against both defendants the next day. Docs. #22, #23.

On February 18, 2021, Judge Virden, noting that "it has been almost a year since the filing of the Clerk's entries of default against [the] defendants, and Plaintiff has yet to take further action in this matter," ordered Navigators to "show cause why this action should not be dismissed for failure to prosecute." Doc. #25. On March 8, 2021, Navigators filed a response to the show cause order. Doc. #26. The same day, Navigators filed a motion for default judgment. Doc. #27.

---

[1] Docs. #4, #6.

## II
## Show Cause Response

In response to Judge Virden's show cause order, Navigators represents that when default was entered against the defendants on March 17, 2020, it was "work[ing] diligently to resolve" a related state court case against Thunder and Navigators "which was necessary in order to definitively quantify its damages against the defendants in the present action;" the state court case was resolved on May 12, 2020; and since that time, "Navigators and its attorneys have been working to quantify and calculate the total, liquidated sum Navigators has incurred as a result of Thunder's and Skinner's defaults on the construction project at issue." Doc. #26 at 3–4. Navigators also cites the COVID-19 pandemic for additional delay. *Id.* at 4.

Federal Rule of Civil Procedure 41(b) allows a district court to dismiss an action for failure to prosecute. "This authority is based on the courts' power to manage and administer their own affairs to ensure the orderly and expeditious disposition of cases." *Berry v. CIGNA/RSI-CIGNA*, 975 F.2d 1188, 1191 (5th Cir. 1992) (internal quotation marks omitted).

Given Navigators' explanation for the delay and its corresponding motion for default judgment, the Court concludes that dismissal for failure to prosecute is not warranted. *See Mullin v. Butler*, 452 F. Supp. 3d 794, 799 (M.D. Tenn. 2020) (dismissal for failure to prosecute not warranted where plaintiff filed a motion for default judgment in response to show cause order).

## III
## Default Judgment

Pursuant to "Rule 55 of the Federal Rules of Civil Procedure, federal courts have the authority to enter a default judgment against a defendant who has failed to plead or otherwise defend upon motion of the plaintiff." *J & J Sports Prods., Inc. v. Morelia Mexican Rest., Inc.*, 126 F. Supp. 3d 809, 813 (N.D. Tex. 2015). "Under Fifth Circuit law, there are three steps to obtaining

a default judgment: first, default by the defendant; second, clerk's entry of default; and third, entry of a default judgment." *Gray v. MYRM Holdings, L.L.C.*, No. A-11-cv-180, 2012 WL 2562369, at *3 (W.D. Tex. June 28, 2012) (citing *N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996)) (emphases omitted).

The first two steps have been satisfied here. Thus, the only remaining issue is whether a default judgment should be entered. In making this determination, the Court conducts a three-question analysis: (1) "whether the entry of default judgment is procedurally warranted;" (2) "whether there is a sufficient basis in the pleadings for the judgment;" and (3) "what form of relief, if any, the plaintiff should receive." *J & J Sports*, 126 F. Supp. 3d at 814. However, "[n]o party is entitled to a default judgment as a matter of right … [and] the entry of default judgment is committed to the discretion of the district judge." *Mid-Gulf Shipping Co. Inc. v. Energy Subsea LLC*, 472 F. Supp. 3d 318, 323 (E.D. La. 2020).

### A. Procedural Justification

In determining whether a default judgment is procedurally warranted, a court should consider (1) "whether material issues of fact are at issue;" (2) "whether there has been substantial prejudice;" (3) "whether the grounds for default are clearly established;" (4) "whether the default was caused by a good faith mistake or excusable neglect;" (5) "the harshness of a default judgment;" and (6) "whether the court would think itself obliged to set aside the default on the defendant's motion." *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

First, where as here, a party fails to respond to or answer the complaint, there are no material issues of fact at issue. *See Alvarado Martinez v. Eltman L., P.C.*, 444 F. Supp. 3d 748, 753 (N.D. Tex. 2020) ("[B]ecause Eltman has not filed any responsive pleading, there are no material facts in dispute.").

4

Second, Thunder and Skinner's failure to respond causes prejudice to Navigators because it "threatens to bring the adversary process to a halt, effectively prejudicing [Navigators'] interests." *Id.*

Third, as mentioned above, the grounds for default have been clearly established.

Fourth, there is no evidence before the Court that the "default was caused by a good faith mistake or excusable neglect." *Lindsey*, 161 F.3d at 893.

Fifth, neither Thunder nor Skinner has attempted to set aside the default since it was entered March 17, 2020. "[W]hile default judgment is a harsh remedy, any harshness is mitigated [when defendants have] had substantial time to correct the default." *Helena Chem. Co. v. Aylward*, No. 4:15-cv-96, 2016 WL 1611121, at *2 (N.D. Miss. Apr. 21, 2016).

Finally, should Thunder or Skinner later seek to challenge the default, the Court is unaware of any facts that would make it "obliged to set aside the default." *Lindsey*, 161 F.3d at 893.

Considering these factors, the Court finds they all weigh in favor of a default judgment being procedurally warranted in this case.

### B. Sufficient Basis in Pleadings

"In light of the entry of default, [a defendant is] deemed to have admitted the allegations set forth in [the p]laintiff's [c]omplaint." *J & J Sports*, 126 F. Supp. 3d at 815. However, a "defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("[A] defendant's default does not in itself warrant the court in entering a default judgment. There must be a sufficient basis in the pleadings for the judgment entered."). Addressing the "sufficient basis in the pleadings" requirement, the Fifth Circuit has stated:

> Despite announcing that a default judgment must be supported by well-pleaded allegations and must have a sufficient basis in the pleadings, the *Nishimatsu* court

5

> did not elaborate on these requirements … and we have found no guidance in our own cases. Nevertheless, we draw meaning from the case law on Rule 8, which sets forth the standards governing the sufficiency of a complaint.
>
> Rule 8(a)(2) requires a pleading to contain a short and plain statement of the claim showing that the pleader is entitled to relief. The purpose of this requirement is to give the defendant fair notice of what the claim is and the grounds upon which it rests. The factual allegations in the complaint need only be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact). Detailed factual allegations are not required, but the pleading must present more than an unadorned, the-defendant-unlawfully-harmed-me accusation.

*Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015) (cleaned up).

### 1. Factual allegations

Navigators provides surety bonds in Mississippi. Doc. #1 at 2. On or about August 4, 2016, "[a]s an inducement of Navigators' issuance of surety bonds, Thunder, and Skinner … executed" the General Indemnity Agreement. *Id.* The indemnity agreement provides that Thunder and Skinner agree to indemnify Navigators for "any and all claims, demands, liability, loss, cost, damages, fees of attorneys, engineers and or/other expenses which [Navigators] may sustain or incur by reason of, or in consequence of the execution of such Bonds." *Id.* at 2–3.

On or about August 2, 2017, Thunder entered a contract with the Tate County School District to "provide all necessary services, labor and equipment for the construction and improvement of the Independence High School Building Addition." *Id.* at 4. Subsequently, on August 21, 2017, relying on the indemnity agreement, Navigators issued a performance bond and a payment bond with a penal sum of $743,494, with Navigators as the surety, Thunder as the principal, and the School District as the obligee. *Id.* at 4.

The School District notified Thunder and Navigators of Thunder's default on the construction contract on December 21, 2017. *Id.* at 5. On January 10, 2018, the School District notified Navigators that Thunder's construction contract had been terminated following the

default. *Id.* at 5. On March 22, 2018, the School District, Navigators, and TDL Contractors entered a contract for TDL Contractors to complete the work on the school, under which Navigators paid the School District "$174,708.17, plus additional architectural and consultant fees in the sum of $45,040.86 and legal fees in the sum of $8,312.50, for a total sum of $228,061.53." *Id.*

On May 22, 2018, the School District informed Navigators of "latent defects related to foundational issues on the perimeter" of the school.[2] *Id.* Pursuant to the indemnity agreement, Navigators demanded indemnification and collateral security from Thunder and Skinner on February 6, 2019, but Thunder and Skinner "have failed and refused to deposit collateral security or satisfy their indemnity obligations." *Id.* at 6.

### 2. Claims

#### a. Breach of indemnity agreement

Navigators' complaint asserts that (1) "[p]ursuant to the terms and conditions of the [General Indemnity Agreement], the defendants are liable, jointly and severally, to Navigators in the amount of all losses and expenses incurred as a result of or in consequence of the issuance of the … Performance Bond;" (2) despite Navigators' demand for indemnification and collateral security, "the defendants have failed and refused to honor their obligations under the [indemnity agreement], to make payment to Navigators pursuant to the [indemnity agreement], and to protect Navigators from liability and loss in connection with the issuance of the Performance Bond;" and (3) the "failure on the part of the defendants to make payment to Navigators pursuant to the [indemnity agreement] and to protect Navigators from liability and loss in connection with the

---

[2] These defects were the subject of the state-court action and resulted in Navigators paying the School District $80,000. Doc. #27-1 at 3.

issuance of the Performance Bond constitutes a breach of the [indemnity agreement]." Doc. #1 at 8–9.

The indemnity agreement provides that the parties "agree that the construction, validity and performance of this Agreement shall be governed by the laws of the State of New York." Doc. #27-1 at PageID 203.

> New York law has long recognized the validity of indemnity agreements. *See, e.g., Continental Cas. Co. v. Nat'l Slovak Sokol, Inc.,* 269 N.Y. 283, 288–90, 199 N.E. 412 (1936); *Chace v. Hinman,* 8 Wend. 452 (N.Y.Sup.Ct.1832). "[P]arties are free to fashion the terms of their own [indemnity] agreement," *Lori–Kay Golf, Inc. v. Lassner,* 61 N.Y.2d 722, 723, 472 N.Y.S.2d 612, 613–14, 460 N.E.2d 1097 (1984), and "in the absence of bad faith, the 'indemnity agreement governs the relationship between ... contractor and ... surety.'" *Gen. Ins. Co. of Am. v. K. Capolino Constr. Corp.,* 903 F. Supp. 623, 626 (S.D.N.Y.1995) (quoting *Bib Constr. Co. v. Fireman's Ins. Co.,* 214 A.D.2d 521, 523, 625 N.Y.S.2d 550, 553 (1st Dep't 1995)); *see also Gen. Accident Ins. Co. of Am. v. Merritt–Meridian Constr. Corp.,* 975 F. Supp. 511, 515–16 (S.D.N.Y.1997) (When a "general contractor has expressly agreed to indemnify the surety ... the indemnity agreement governs the relationship between the surety and the contractor").

*U.S. Fid. & Guar. Co. v. Sequip Participacoes, S.A.*, No. 98 CIV. 3099, 2003 WL 22743430, at *5 (S.D.N.Y. Nov. 19, 2003). "When a party is under no legal duty to indemnify, a contract assuming that obligation must be strictly construed to avoid reading into it a duty which the parties did not intend to be assumed." *Hooper Assocs., Ltd. v. AGS Computers, Inc.*, 548 N.E.2d 903, 905 (N.Y. 1989).

The indemnity agreement provides that Thunder and Skinner "will exonerate, indemnify, and hold harmless [Navigators] against any and all claims, demands, liability, loss, cost, damages, fees of attorneys, engineers and/or other expenses which [Navigators] may sustain or incur by reason of, or in consequence of the execution of" the bonds. Doc. #1-1 at PageID 16. Under the performance bond, after Thunder and Skinner defaulted and the School District terminated the contract and complied with certain notice requirements, an obligation arose for Navigators to

arrange for completion of the construction project. Doc. #1-3. Even strictly construed, the language of the indemnity agreement demonstrates that the parties intended to, and did, enter into an indemnity agreement under which Thunder and Skinner were liable to Navigators for any claims made on the bonds. Because Thunder and Skinner defaulted on the construction contract, causing Navigators to incur expenses under the performance bond, they breached the indemnity agreement and are liable to Navigators.

### b. Remaining claims

Although Navigators' complaint contains the six separate counts listed above, its motion for default judgment and accompanying memorandum only address the claim for breach of the indemnity agreement. *See* Doc. #27 at 2 ("This is an action on a verified complaint for damages recoverable pursuant to the terms and conditions of the General Indemnity Agreement."); Doc. #28 at 6 ("The well-pleaded factual allegations of Navigators' claims are sufficient to establish … Navigators' losses and expenses on the claims made on the Bonds resulting liability of the defendants to Navigators under the express language of the [indemnity agreement]."). Because Navigators does not specifically address the remaining claims or present any argument as to why the allegations of the complaint provide a sufficient basis for a default judgment on them, the motion will be denied with respect to those claims.

### C. Damages

Navigators seeks "damages recoverable pursuant to the terms and conditions of the General Indemnity Agreement" including $282,102.50 in bond losses, $24,184.08 for consultant expenses, and $75,170.83 in attorney's fees and costs, for a total amount of $381,457.41, plus post judgment interest. Doc. #27 at 2–3.

9

"A default judgment is a judgment on the merits that conclusively establishes the defendant's liability. But it does not establish the amount of damages." *United States ex rel. M-CO Constr., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987) (collecting cases). Rather, "the burden of establishing damages rest[s] squarely and solely on [the plaintiff]." *Flynn v. People's Choice Home Loans, Inc.*, 440 F. App'x 452, 457 (6th Cir. 2011).

The indemnity agreement provides:

> An itemized statement of payments made by the Surety for any of the purposes specified herein, sworn to by an officer of the Surety or the copies of the checks or drafts for such payments shall be prima facie evidence of the liability of the Indemnitor(s) to reimburse the Surety such amounts from the date of payment.

Doc. #1-1 at PageID 17.

In support of its damages request, Navigators relies on the declaration of Brian Bragg, a claims consultant[3] responsible for "handling, managing, and disposing of claims and determining adjustment losses on Navigators' bonds." Doc. #27-1. Bragg states that Navigators incurred expenses for completing the construction contract, for retaining a law firm to communicate and attempt to recover from Thunder and Skinner and draft the completion contract, and for retaining consultants "to assist with the evaluation and investigation of the claims made on the Bonds." *Id.* at 2-3. According to Bragg, Navigators is entitled to recover $282,102.50 for bond losses, $75,170.83 for attorney's fees, and $24,184.08 for consultant expenses, resulting in a "Total Net loss" of $381,457.41. *Id.* at 3–4. However, contrary to the indemnity agreement, Bragg's declaration does not include "[a]n itemized statement of *payments* made by [Navigators]" to

---

[3] Bragg is "employed by The Hartford as a Claims Consultant. Navigator's Insurance Company is a direct, wholly owned subsidiary of the Hartford Holding Company ('Navigators')." Doc. #27-1 at 1. Bragg also is "Navigators' corporate representative for the above-captioned case and custodian of the records pertaining to the performance bond and the payment bond …." *Id.* at 2.

support these amounts.[4]  Doc. #1-1 at PageID 17 (emphasis added).  Nor has Navigators, through Bragg or otherwise, submitted "the copies of the checks or drafts for such payments."  Because these failures leave unclear whether such bond losses, fees, and expenses were the result of "payments made by" Navigators, the motion will be denied without prejudice on the issue of damages for breach of the indemnity agreement, with Navigators allowed to renew its request for damages.

## IV
## Conclusion

Navigators' motion for default judgment [27] is **GRANTED in Part and DENIED in Part**.  It is GRANTED to the extent a default judgment will be entered against Thunder and Skinner on Navigators' claim for breach of the indemnity agreement.  It is DENIED without prejudice to the extent it seeks damages for breach of the indemnity agreement.  Within fourteen (14) days of the entry of this order, Navigators may renew its request for damages for breach of the indemnity agreement.  In all other respects, the motion is DENIED.

**SO ORDERED**, this 6th day of August, 2021.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**

---

[4] It is also not clear that Bragg's position as a claims consultant and Navigators' "corporate representative" for this case, *see* Doc. #27-1 at 1–2, qualifies him as an officer of Navigators as contemplated by the indemnity agreement.